UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

        vs.                                           5:08-CR-240
                                                     (FJS)

CHARLES VEJVODA, JR.,

                                    Defendant.

_____

MICHAEL OLMSTEAD, Asst. U.S. Attorney
MELISSA A. TUOHEY, Asst. FPD

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

On May 8, 2008, defendant was indicted for mailing an injurious item, in violation of 18 U.S.C. § 1716.  Specifically, defendant was charged with mailing a syringe, packaged in a way that, when the item was opened, it would strike the recipient.  It is alleged that laboratory tests indicate that the syringe may have contained human blood.  The investigation involved three mailings, one of which opened in the Northern District of New York.

**1.**    <u>**Background**</u>

The defendant was arrested at Riker's Island on May 2, 2008, where he had been serving a sentence of incarceration on an unrelated crime.  On May 8, 2008, Eastern District of New York Magistrate Judge Joan M. Azrack ordered the defendant detained.  On May 22, 2008, an order was issued, removing defendant to the Northern District of New York, and he appeared before this court on May 30, 2008.  At his

initial appearance, the court found defendant financially eligible and appointed counsel for him.

On May 30, 2008, Government counsel filed a motion for a hearing to determine the mental competency of the defendant pursuant to 18 U.S.C. § 4241(a). (Dkt. No. 8).  The motion was based upon the defendant's long history of addiction and mental illness, together with his conduct when he was arrested and held in the Eastern District of New York.  In a letter, dated June 3, 2008, defense counsel stated that her client did not oppose the Government's motion. (Dkt. No. 10).  Based on this court's observations of defendant's behavior at his initial appearance,[1] defendant's history, the Government's motion, and the defendant's consent, this court granted the motion. (Dkt. No. 11).

Defendant was sent to the Metropolitan Correctional Center in New York City for a mental examination pursuant to 18 U.S.C. § 4241(b).  A report was issued on July 17, 2008, signed by Psychologist Dr. Elissa Miller and reviewed by Dr. William J. Ryan, Acting Chief Forensic Psychologist.

## 2. <u>Competency</u>

It is well settled that the Government may not try a defendant whose mental condition prevents him from understanding the proceedings against him, consulting with counsel, and assisting in his defense. *United States v. Quintieri*, 306 F.3d 1217, 1232 (2d Cir. 2004)(citing *inter alia Medina v. California*, 505 U.S. 437, 439 (1992)).

---

[1] The court notes that the defendant was so belligerent, and behaving so bizarrely at the time of his initial appearance, that the court held the appearance at the Onondaga County Justice Center, rather than requiring the Marshal to bring him to the Courthouse.

It is a violation of due process to convict a defendant who is legally incompetent. *United States v. Auen*, 846 F.2d 872, 877 (2d Cir. 1988)(citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966))

As stated above, a mental examination of a defendant may be ordered under 18 U.S.C. § 4241(b).  To assess a defendant's competency after the evaluation, the court must hold a hearing in accordance with 18 U.S.C. § 4247(d). *See* 18 U.S.C. § 4241(c). The Local Rules of the Northern District of New York specifically authorize a Magistrate Judge to determine motions pursuant to 18 U.S.C. § 4142(a), as well as conduct the competency hearing pursuant to 18 U.S.C. § 4247(d). LOCAL RULES OF CRIMINAL PROCEDURE N.D.N.Y. 58.1(a)(2)(K).  The rule further provides that the Magistrate Judge shall issue a Report-Recommendation to the assigned District Judge pursuant to 28 U.S.C. § 636(b). *Id.*  No specific referral order is needed.

The statute provides that the defendant must be represented by counsel, and shall be afforded an opportunity to subpoena witnesses on his behalf and to confront and cross-examine witnesses who appear at the hearing. 18 U.S.C. § 4247(d).  After conducting the hearing, the court must make findings by a preponderance of the evidence as to whether the defendant is presently suffering from a mental disease or defect, and if so, whether that mental disease or defect renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense. 18 U.S.C. § 4241(d).

The court must determine whether the defendant "has sufficient present ability

to consult with his lawyer with a reasonable degree of rational understanding" and " a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960)(internal quotations omitted).  In making this determination, the court may consider a number of factors, including both medical opinion and the court's own observation of the defendant's behavior in the courtroom. *See United States v. Schlueter*, No. 08-184, 2008 U.S. App. LEXIS 9561, *5-6 (2d Cir. May 2, 2008)(citing *inter alia United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995)).

In this case, the court held the competency hearing in two parts.  On August 20, 2008, this court took the telephonic testimony of Dr. Elissa Miller, Ph.D.  Dr. Miller is the psychologist who examined the defendant.  Dr. Miller has also submitted a written report of her findings.  The telephone conference at which Dr. Miller testified was attended by defense counsel[2] and Government counsel as well as the court.  There was a compelling reason to take Dr. Miller's testimony by telephone.  Dr. Miller was about to give birth to a baby, and her due date was the date of the telephonic hearing.  She would not have been able to travel to this court for the hearing, and would not have been able to travel to the Northern District of New York for quite some time after the birth of her child.  Thus, the court took Dr. Miller's testimony by telephone.[3]  Dr.

___

[2] The defendant himself did not participate in the telephone conference.

[3] On August 14, 2008, the court held a telephone conference to discuss the "logistics" and difficulties of holding a competency hearing with this defendant.  The Marshal informed the court that the defendant had been "banned" from the Onondaga County Justice Center, making it very difficult to house the defendant during time for the hearing.  The court was also informed that Dr. Miller was about to be on maternity leave and would be unable to attend any hearing in

4

Miller's report was admitted into evidence.

Dr. Miller's report indicates that prior to the evaluation, the defendant was informed of Dr. Miller's qualifications and the purpose of the evaluation. He was informed that he could consult with counsel at any time. Although the defendant refused to speak when he was asked to rephrase the warning, Dr. Miller believed that defendant had understood the statement. Report at 1.

During the telephonic hearing, Dr. Miller testified that she attempted to meet with defendant on four or more occasions, but that on two of the occasions, he refused to meet with her. On the two occasions that defendant consented to meet with Dr. Miller, he was very uncooperative and did not wish to give her any information about himself or any other subjects. During the two meetings in which she was able to speak with defendant, Dr. Miller observed that defendant had very guarded behavior with paranoid tendencies, manic presentation, and was hyperactive verbally. When he did speak, he mumbled at a rapid pace.

Dr. Miller stated that in making her determination, she considered over 1,500 pages of the defendant's prior psychiatric records. She also spoke with the defendant's prior defense counsel as well as defendant's father. Defendant has a history of approximately forty hospitalizations for psychiatric problems. The diagnoses have been mainly bipolar disorder, personality disorder, and substance

_____

Syracuse. Defense counsel did not object to conducting the competency hearing in two stages. When asked whether counsel had been able to communicate with the defendant, counsel stated that it was very difficult to communicate with defendant, and that he was disagreeing with all statements.

abuse.  Currently, the diagnoses are Bipolar I Disorder, Most Recent Episode Hypomanic; Polysubstance Dependence; and Personality Disorder Not Otherwise Specified with Borderline and Antisocial Personality Traits.[4] Report at 16.

Defendant also has a history of very violent behavior.  One of the reasons that this court conducted the defendant's initial appearance at the place of his incarceration was due the violent behavior he exhibited.  It was deemed that transporting him to the courthouse would be a security risk.  Dr. Miller's report states that according to Government counsel, defendant is "known for biting his tongue and spitting out blood on others." Report at 15.  Dr. Miller also stated that the defendant had exhibited violent behavior with one of his previous psychiatrists.

Dr. Miller concluded that the defendant is not competent to proceed with his case at this time.  She stated that although he had a basic understanding of the nature of the charges, she believed that he would be unable, due to his mental disorders to assist properly in his defense.  Dr. Miller's extensive report supports her testimony during the telephonic hearing.  In her report, Dr. Miller stated that although defendant refused all interviews and refused to participate in a competency interview, he did exhibit behavior consistent with mania. Report at 15-16.  Dr. Miller stated that during his stay at the facility, he exhibited pressured speech, was observed to exercise excessively, was angry and irritable during the attempted interviews, and wrote expansive and disorganized letters to his attorney.  Defendant also complained about not receiving proper medical care, but refused the care when it was offered. Report at

---

[4] Defendant has also been diagnosed with Hepatitis C and is HIV-positive. Report at 10.

16. Dr. Miller believed that defendant's mental illness impaired his ability to participate in the interview process. *Id.*

Dr. Miller's report concluded that due to defendant's hypomanic presentation, uncooperative behavior, and mental illness, it is "unlikely that he is currently capable of maintaining proper courtroom behavior, as well as appropriately attending to and participating in courtroom proceedings." Report at 16. Furthermore, Dr. Miller believes that defendant is not in good contact with reality, does not comprehend the seriousness of his case, cannot communicate with counsel, and could not testify in his own defense or speak at a sentencing proceeding should that occur. *Id.* Both Government counsel and defense counsel were given the opportunity to question Dr. Miller, but each declined to do so.

On September 4, 2008, this court continued the competency hearing. Due to the difficulties in transporting this defendant, the hearing was held by video-conference with defendant in Binghamton. The court, defense counsel, and Government counsel were present in Syracuse, New York. The defendant was extremely aggressive with security personnel in Binghamton. He attempted to spit on people, and ultimately a mask was placed over his mouth to avoid this behavior. He berated the court, court personnel, and his own attorney with foul language.

The court attempted to hold a rational hearing with this defendant, but the defendant continued to interrupt and made it very difficult for the court to communicate with him. The court attempted to discuss the competency issue with the defendant and informed him that Dr. Miller had issued a report and had testified by

7

telephone.  Defendant responded that Dr. Miller was "Jewish," and she did not "like"
the defendant.  He made some passing references to Hitler and made other disparaging
comments about Dr. Miller's condition.

Defendant also berated his attorney and made several attempts to "fire" her
during the hearing.  The court attempted to ask the defendant whether he wanted any
witnesses.  Although initially, defendant stated that he wanted "a ton of witnesses," it
was unclear what witnesses he was referring to, and his subsequent tirades made it
difficult to keep the conversation on track.  The defendant did state that he disagreed
with the doctor and that he wanted to stand trial.  Defendant informed the court that he
"had 735's" in the state courts.[5]   The court notes that although defendant had "fired"
his attorney during the hearing, when the hearing was over, defendant began to ask
Ms. Tuohey for advice and asked her to explain what had happened.

This court finds, based upon Dr. Miller's testimony, her report, and the
defendant's behavior in court and at the detention facility, that he is not currently
competent to stand trial.  This finding is based principally on defendant's inability to
assist properly in his defense.  The defendant appears to be unable to maintain rational
behavior and becomes aggressive and violent in an unpredictable manner.  The court
has had the opportunity to observe the defendant at two court proceedings.  Based
upon his bizarre conduct, defendant was unable to be brought to the courthouse for the
first appearance and was thereafter banned from the facility in which he was being

---

[5] The court notes that N.Y. CRIM. PROC. LAW § 730.30 *et seq.* governs the fitness to
proceed in New York State criminal courts.  Defendant may have been attempting to inform the
court that he has been the subject of prior competency hearings in state court.

housed, making it more difficult to hold the next appearance.

At defendant's second appearance, his behavior made it impossible for the court to conduct a proper hearing, and it was clear that defendant did not wish to listen to the court or communicate with his attorney.  His behavior caused the Marshal to apply a mask to the defendant's mouth to avoid him spitting on security and court personnel. Thus, the court finds, by a preponderance of the evidence, that defendant is currently suffering from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to assist properly in his defense, and is thus, incompetent to stand trial.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that defendant be found **incompetent** to stand trial, and it is

**RECOMMENDED,** that if the District Judge adopts this recommendation, the defendant be entrusted to the custody of the Attorney General pursuant to 18 U.S.C. §4241(d), for hospitalization for treatment in a suitable facility for a duration not to exceed four months to determine whether there is a substantial probability that in the foreseeable future, defendant will attain the capacity to permit the proceedings to go forward, and that at the end of that time, the Attorney General return the defendant to the custody of the United States Marshal, who will then bring the defendant back before the court for re-examination of his competency pursuant to the statute, and it is

**ORDERED**, that due to the sensitive nature of the information contained in Dr. Miller's psychological report, the report be filed under seal, and it is

**ORDERED**, that all the time associated with the competency examination and treatment be excluded for purposes of any speedy trial computation in this matter, and it is

**ORDERED,** that the United States Marshal serve defendant with this Order and Report-Recommendation by delivering a copy to defendant **personally.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 9, 2008

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

10